IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| Praveen Kumar Mandanapu, | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | 1:10cv1167 (LMB/TCB) |
| | ) | |
| David B. Everett, | ) | |
|     Respondent. | ) | |

## MEMORANDUM OPINION

Praveen Kumar Mandanapu, a Virginia inmate proceeding through counsel, has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the validity of his first degree murder conviction in the Loudoun County Circuit Court. Incorporated within the petition is a request for an evidentiary hearing. Respondent filed a Motion to Dismiss and Rule 5 Answer, with a supporting brief and numerous exhibits. Mandanapu filed a reply on February 28, 2011. By Order dated June 20, 2011, the parties were directed to file supplemental briefs addressing the effect of Cullen v. Pinholster, 131 S. Ct. 1388 (2011), on petitioner's request for an evidentiary hearing. For the reasons that follow, the Motion to Dismiss will be granted, and the request for an evidentiary hearing will be denied.

### I. Background

On June 14, 2004, a maintenance worker at an apartment complex found the dismembered body of petitioner's wife Divya Mandanapu ("Divya"). The body was in a duffel bag that had been placed inside a suitcase tied with white twine. See Pet. 3, ECF No. 1. An autopsy performed on June 15 revealed that the cause of death was head and neck trauma and that Divya's limbs had been

removed post-mortem. Id. Divya was reported missing by her co-workers on June 16, and they later identified her as the person found in the dumpster. Id. The evidence revealed that Divya was killed on or about June 12, 2004. See Va. Ct. of App., Dec. 28, 2007, at 2, ECF No. 5-3.

On the afternoon of June 16, an off-duty deputy sheriff found petitioner Praveen Mandanapu ("Mandanapu") awake but unresponsive in his car after an apparent suicide attempt. See Pet. 3, ECF No. 1. Mandanapu was taken to the Winchester Medical Center, where he was placed under suicide watch. Id. He was transferred to police custody on June 1 and was taken to the Winchester Police Department. Id. at 4. There, he received Miranda warnings, was interviewed, and was eventually returned to an isolation cell under suicide watch. Id. He initiated contact with officers the next day, which led to a second interrogation during which he confessed to killing his wife. Id. He was transferred to Loudoun County Adult Detention Center on June 20, where he initiated a third interview with law enforcement. Id.

At trial as part of the prosecution's case-in-chief, witness Bruce Lipski testified that he had seen Mandanapu the weekend his wife had disappeared at their mutual place of employment, Pulse Communications. Id. Lipski stated that Mandanapu was wearing a hat covering his face and carrying an industrial sized mop and broom. Id. at 4-5. Lipski further stated that he saw the mop and broom in the back of a car in the office parking lot when he left the premises that day. Id. at 5. This testimony was damaging to Mandanapu because his theory of defense was that he had falsely confessed to the murder because he was depressed and suicidal after his wife had left him, and Lipski's testimony "both undermine[d] the strategy and bolster[ed] the credibility of his confession." See Br. in Supp. of Mot. to Dismiss 15, ECF No. 5. However, because Mandanapu's counsel had

not interviewed Lipski before trial, the cross-examination was limited to three questions about the timing of this encounter. See Pet. 7-8, ECF No. 1.

On August 30, 2006 a jury convicted Mandanapu of first degree murder in the Loudoun County Circuit Court. Commonwealth v. Mandanapu, Case No. CR00016800-00. The court sentenced him to fifty-five years incarceration, as well as three years of post-release supervision, which was suspended. Mandanapu pursued a direct appeal to the Court of Appeals of Virginia. The Court of Appeals initially denied the petition for appeal on December 28, 2007, and a three-judge panel denied the petition on March 5, 2008. Mandanapu v. Commonwealth, R. No. 0310-07-4. (Va. Ct. App. March 5, 2008). On September 30, 2008, the Supreme Court of Virginia refused Mandanapu's petition for appeal. Mandanapu v. Commonwealth, R. No. 080657 (Va. Sept. 30, 2008). Mandanapu filed a pro se petition for writ of certiorari to the United States Supreme Court, which was denied on April 6, 2009. Mandanapu v. Virginia, 129 S. Ct. 1913 (2009).

Mandanapu filed a petition for writ of habeas corpus in the Supreme Court of Virginia on September 24, 2009, claiming in relevant part that he had received ineffective assistance of counsel when his attorney failed to interview witness Bruce Lipski despite knowing that petitioner had seen Lipski the weekend that the murder allegedly occurred. The Court refused the petition on April 7, 2010. Mandanapu v. Director, Department of Corrections, R. No. 091953 (Va. April 7, 2010).

On October 15, 2010, Mandanapu filed the instant federal habeas petition, raising the sole claim of ineffective assistance of counsel for failure to interview witness Bruce Lipski before trial. Based on the pleadings and record before this Court, it is uncontested that Mandanapu exhausted his claim as required under 28 U.S.C. § 2254.

## II. Standard of Review

When a state court has addressed the merits of a claim raised in a federal habeas petition, a federal court may not grant the petition based on the claim unless the state court's adjudication is contrary to, or an unreasonable application of, clearly established federal law, or is based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). The evaluation of whether a state court decision is "contrary to" or "an unreasonable application of" federal law is based on an independent review of each standard. See Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court determination runs afoul of the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Id. at 413. Under the "unreasonable application" clause, the writ should be granted if the federal court finds that the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. Importantly, this standard of reasonableness is an objective one. Id. at 410. Moreover, in evaluating whether a state court's determination of the facts is unreasonable, a federal court reviewing a habeas petition "presume[s] the [state] court's factual findings to be sound unless [petitioner] rebuts 'the presumption of correctness by clear and convincing evidence.'" Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. 2254(e)(1)); see, e.g., Lenz v. Washington, 444 F.3d 295, 300-01 (4th Cir. 2006).

## III. Analysis

Mandanapu argues his trial counsel provided ineffective assistance by failing to interview Bruce Lipski. The Supreme Court of Virginia dismissed the claim as failing to satisfy the standard

for ineffective assistance of counsel articulated in Strickland v. Washington, 466 U.S. 668 (1984). Mandanapu, R. No. 091953, ECF No. 1-4. Specifically, the Supreme Court of Virginia held that Mandanapu failed to satisfy both the performance prong and the prejudice prong of the Strickland standard.

To establish ineffective assistance of counsel, a petitioner must show that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defendant." Strickland, 466 U.S. at 687. To prove that counsel's performance was deficient, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness," id. at 688, and that the "acts and omissions" of counsel were, in light of all the circumstances, "outside the range of professionally competent assistance." Id. at 690. Such a determination "must be highly deferential," with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000) (reviewing court "must filter the distorting effects of hindsight from [its] analysis"); Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994) (court must "presume that challenged acts are likely the result of sound trial strategy."). Notably, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable...[but] whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington v. Richter, 131 S.Ct. 770, 788 (2011).

To satisfy Strickland's prejudice prong, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.; accord Lovitt v. True, 403 F.3d 171, 181 (4th Cir.

2005). The burden is on the petitioner to establish not merely that counsel's errors created the possibility of prejudice, but rather "that they worked to his *actual* and substantial disadvantage, infecting his entire trial with errors of constitutional dimension." Murray v. Carrier, 477 U.S. 478, 494 (1986) (citations omitted). The two prongs of the Strickland test are "separate and distinct elements of an ineffective assistance claim," and a successful petition "must show both deficient performance and prejudice." Spencer, 18 F.3d at 233. Therefore, a court need not review the reasonableness of counsel's performance if a petitioner fails to show prejudice. Quesinberry v. Taylore, 162 F.3d 273, 278 (4th Cir. 1998).

In rejecting Mandanapu's claim that counsel had rendered ineffective assistance by failing to interview Lipski before trial, the Supreme Court of Virginia explained:

> Petitioner fails to proffer what information Lipski would have told trial counsel other than his trial testimony that he saw petitioner with a mop on that day, information that petitioner already had. Furthermore, as petitioner told counsel about his encounter with Lipski, but failed to mention the mop, counsel was entitled to rely on petitioner's version of the encounter. Counsel's representation does not fall 'below an objective standard of reasonableness' when counsel relies upon information supplied by his client and '[does] not also investigate alternative defenses.' Curo v. Becker, 254 Va. 486, 493, 493 S.E.2d 368, 371 (1997) (citing Strickland, 466 U.S. at 688, 691). Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

See Va. Sup. Ct., April 7, 2010, at 2, ECF No. 1-4. Mandanapu concedes that the Supreme Court of Virginia's decision was not contrary to clearly established federal law because the Court identified Strickland as controlling, but he argues that its decision was both based on an unreasonable determination of the facts and an unreasonable application of clearly established federal law. See Pet. 9, ECF No. 1. Neither of these arguments has merit.

A. <u>Unreasonable Determination of the Facts</u>

Mandanapu argues that the Supreme Court of Virginia's decision was based on an unreasonable determination of the facts because "it was unreasonable for the court to find that Mandanapu knew what Lipski's testimony would be without holding an evidentiary hearing, placing Lipski and Mandanapu under oath and resolving this material factual dispute." See Pet. 20, ECF No. 1. This argument is without merit and will be dismissed.

To determine whether defense counsel was ineffective by failing to interview Lipski as part of his pretrial investigation, the Court must determine (1) what Mandanapu told his lawyer about his encounter with Lipski without mentioning the broom and mop, (2) whether and when Mandanapu's lawyer attempted to interview Lipski, and (3) whether Lipski testified that he saw Mandanapu with a broom and a mop. None of these factual issues were resolved against Mandanapu by the Supreme Court of Virginia, and his argument that the Court's decision was based on an unreasonable determination of the facts is without merit.

B. <u>Unreasonable Application of Federal Law</u>

1. <u>Performance Prong</u>

Mandanapu argues that counsel should have interviewed Lipski before trial because Mandanapu informed counsel that he had encountered Lipski on the weekend of Divya's murder. Given that the defense theory at trial was that Mandanapu was innocent and that he only confessed because he was depressed and suicidal, counsel should have interviewed the only person who had seen Mandanapu that weekend to determine whether that person's description of Mandanapu's behavior would support or undermine that defense theory. Mandanapu provides copies of trial counsel's notes from meetings on April 4, 2005 and April 28, 2005, both of which reference

Mandanapu's encounter with Lipski. See Notes at 4-5, ECF No. 1-6. Mandanapu also provides excerpts from a memorandum written by his trial counsel, in which counsel indicates that he had asked an investigator to find contact information for Lipski but had not interviewed Lipski after that information was found because he "had incorporated Praveen's Key [sic] card records into our defense, and did not think it was worth it to interview Lipski about the key card." See Aff. 1, ECF No. 1-6. Counsel further explains that he was "surprised when Lipski testified he had seen Praveen with a mop and broom, and felt that this evidence damaged our defense." Id. Mandanapu emphasizes that his attorney's actions cannot be attributed to trial strategy because "[n]o decision about Lipski's usefulness or potential harm could be made, of course, unless he was actually approached by trial counsel prior to trial." See Pet. 12, ECF No. 1.

The Fourth Circuit has recognized that "[c]ounsel must ordinarily 'investigate possible methods for impeaching prosecution witnesses,' and in some instances failure to do so may suffice to prove a claim under Strickland." See Huffington, 140 F.3d at 580 ("This and other courts have held an attorney's representation deficient when he failed to contact and interview important prospective witnesses, especially when they were readily available or had been identified by the defendant prior to trial.") (citations omitted). Notably, however, a lawyer is not expected to "investigate everyone whose name happens to be mentioned by the defendant."

Here, the Supreme Court of Virginia cited Strickland to support its reasoning that counsel's failure to interview Lipski did not constitute deficient performance because counsel was entitled to rely on Mandanapu's version of his encounter with Lipski. In Strickland, the Court stated that "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." 466 U.S. at 691 ("Counsel's actions are usually based, quite properly,

on informed strategic choices made by the defendant and on information supplied by the defendant."). The Court also explained that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary" so that "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Id.

Based on the record before this Court, the Supreme Court of Virginia reasonably found that counsel's failure to interview Lipski before trial did not amount to constitutionally deficient performance. As that Court found, Mandanapu had told counsel about his encounter with Lipski but neglected to mention that he was carrying a mop at the time, the very detail which he now argues was of critical importance to his defense. In rejecting Mandanapu's challenge to his representation, the Supreme Court of Virginia relied on the settled proposition that informed strategic choices made by counsel when relying on information supplied by the defendant cannot provide the basis for an ineffective assistance claim. Curo, 493 S.E.2d at 371; see also Strickland, 466 U.S. at 691 (explaining that a lawyer may reasonably use information supplied by a defendant to decide which investigations are worth pursuing). Here, Mandanapu argues that Lipski "could have been an important witness" Pet. 12, ECF 1, but in the absence of the information regarding the mop that Mandanapu chose to withhold from counsel (the truth of which he does not dispute here), counsel was not alerted to the potentially damaging testimony Lipski could offer. Thus, Mandanapu's attempt now to fault counsel for failing to ferret out information which Mandanapu himself could have provided at any time must be rejected. Because the Supreme Court of Virginia's decision manifestly demonstrates the existence of a "reasonable argument that counsel satisfied Strickland's deferential standard," Harrington, 131 S.Ct. at 788, Mandanapu fails to establish that counsel's failure to

interview Lipski was constitutionally deficient, thereby not satisfying the performance prong of Strickland.

2. Prejudice Prong

Even if Mandanapu had satisfied Strickland's performance prong, he has utterly failed to demonstrate that he suffered prejudice as the result of counsel's failure to interview Lipski. Specifically, Mandanapu argues that he was prejudiced when counsel failed to interview Lipski because he would have accepted a plea offer from the Commonwealth or pursued a different trial strategy if his attorney had ascertained the nature of Lipski's testimony prior to trial. Neither of these arguments is persuasive.

Although the Fourth Circuit has recognized that the prejudice prong of the Strickland test can be satisfied if a petitioner proves that the ineffective assistance "caused the defendant to reject a plea agreement and proceed to trial," see United States v. Merritt, 102 F. App'x 303, 307 (4th Cir. 2004), the relevant question here is whether there is a reasonable probability that, but for counsel's errors, the petitioner would have accepted the plea agreement. Id. The record indicates that the Commonwealth offered Mandanapu two plea agreements: (1) plead guilty to second degree murder with a statutory maximum sentence of forty years and give up the right to appeal the suppression issue, or (2) enter a conditional guilty plea to first degree murder while preserving his ability to appeal the denial of his motion to suppress. See Pet. FN9, ECF No. 1. Although Mandanapu now asserts that he would have accepted one of these plea agreements had he known that Lipski was going to testify, his statement is purely speculative and finds no support in the record. In fact, what is apparent on this record is that Mandanapu elected to gamble that a trial would result either in outright acquittal or a sentence less onerous than the forty-year term attached to the plea deal, and

that now in hindsight he would welcome a second bite at the apple. Under these circumstances, no reasonable probability can be discerned that but for counsel's failure to interview Lipski, Mandanapu would have accepted the plea agreement when it was offered.

Mandanapu contends as a further theory of prejudice that he would have rejected the "false confession" theory of defense and opted instead for a "heat of passion" argument had he known how Lipski would testify. Since Mandanapu himself knew that he was carrying a mop when he encountered Lipski, he personally possessed the information that he now argues was critical to his choice of what defense to present. Thus, any prejudice Mandanapu suffered with regard to counsel's alleged inability to "adjust[] his defensive strategy and mitigate[] the damaging effects of [that witness]'s testimony," Koon, 277 F. App'x at 388, was attributable to Mandanapu's own failure to provide counsel with the relevant information. Moreover, Mandanapu provides no explanation of why he believes a "heat of passion" defense would have been any more successful than the "false confession" argument the jury heard. As Mandanapu fails to carry his burden to demonstrate a reasonable probability that the outcome of his trial would have been different, he has failed to satisfy the prejudice prong of Strickland, and his claim of ineffective assistance of counsel warrants no federal relief.

3. Evidentiary Hearing

Both parties agree that "a federal court may properly conduct an evidentiary hearing 'to determine whether and to what extent to grant relief,' if it determines that the state court decision denying habeas relief unreasonably applied federal law." See Resp.'s Reply at 2, ECF No. 11 (citing Pinholster, 131 S.Ct. at 1412 (Breyer, J., concurring in part and dissenting in part)); Pet.'s Resp. at

11

2, ECF No. 10. Here, however, as the state court decision denying habeas relief reasonably applied federal law, an evidentiary hearing would be inappropriate, and will be denied.

### IV. Conclusion

For the above stated reasons, respondent's Motion to Dismiss will be granted, this petition will be dismissed with prejudice, and petitioner's request for an evidentiary hearing will be denied. An appropriate Order shall issue.

Entered this 15th day of September 2011.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge